JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

THE PHILLIES

**DEFENDANTS**

ZELUS ANALYTICS INC. and TEAMWORKS INNOVATIONS, INC.

**(b)** County of Residence of First Listed Plaintiff   Philadelphia, PA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Bexas County, TX
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Phillip Berger, Berger Law Group, PC, 610-668-0774
919 Conestoga Rd, Bldg 3 Ste 114, Bryn Mawr, PA 19010

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government
Plaintiff
- [ ] 3   Federal Question
*(U.S. Government Not a Party)*
- [ ] 2   U.S. Government
Defendant
- [x] 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [x] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - | of Property 21 USC 881 | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product | Product Liability | [ ] 690 Other | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument | Liability | [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' | Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted | Liability | [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
| Student Loans | [ ] 340 Marine | Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
| (Excludes Veterans) | [ ] 345 Marine Product | Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
| of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle | [ ] 371 Truth in Lending | Act | | [ ] 485 Telephone Consumer |
| [x] 190 Other Contract | Product Liability | [ ] 380 Other Personal | [ ] 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal | Property Damage | Relations | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury | [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury - | Product Liability | [ ] 751 Family and Medical | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate | | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ | Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - | [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| | Other | [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original
Proceeding
- [ ] 2   Removed from
State Court
- [ ] 3   Remanded from
Appellate Court
- [ ] 4   Reinstated or
Reopened
- [ ] 5   Transferred from
Another District
*(specify)*
- [ ] 6   Multidistrict
Litigation -
Transfer
- [ ] 8   Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332 (Diversity of Citizenship)

Brief description of cause:
Breach of contract and related claims regarding exclusivity provisions in baseball analytics platform licensing agreement

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
Mar 14, 2025

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: __Philadelphia, PA_____

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                              Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?        Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?                                                                                                         Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply?               Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ is / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Wage and Hour Class Action/Collective Action
- ☐ 6. Patent
- ☐ 7. Copyright/Trademark
- ☐ 8. Employment
- ☐ 9. Labor-Management Relations
- ☐ 10. Civil Rights
- ☐ 11. Habeas Corpus
- ☐ 12. Securities Cases
- ☐ 13. Social Security Review Cases
- ☐ 14. Qui Tam Cases
- ☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
- ☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.** *Diversity Jurisdiction Cases:*

- ☒ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)*:_____
- ☐ 7. Products Liability
- ☐ 8. All Other Diversity Cases: *(Please specify)*_____
   _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

10/2024

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE PHILLIES<br><br>               Plaintiff,<br>   v.<br><br>ZELUS ANALYTICS, INC. and<br>TEAMWORKS INNOVATIONS, INC.<br>                     Defendant. | Civil Action No.<br><br>**JURY DEMANDED** |

## COMPLAINT

### I.    INTRODUCTION

1.    Plaintiff, The Phillies ("The Phillies"), brings this action against Defendants, Zelus Analytics, Inc. ("Zelus") and Teamworks Innovations, Inc. ("Teamworks"), for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and tortious interference with contract, and seeks immediate injunctive relief to enforce the exclusivity provisions of the parties' Agreement (as defined herein).

2.    The Phillies seek to enjoin Defendants from selling, licensing, or otherwise distributing the Titan Intelligence Platform, or any of its components, to any Major League Baseball ("MLB") team beyond the maximum six teams (one per division) specifically permitted under the Agreement. This includes enjoining Defendants from selling components to any other National League East Division ("NL East") teams, and from selling components to any other MLB team beyond

1

the six-team limit as established in the Agreement.

      3.      The parties entered into a series of agreements being Order #1 on April 9, 2022, then followed by Order #2 on February 17, 2023 (collectively, the "Agreement"), both of which granted The Phillies an exclusive license to the use of the Titan Intelligence Platform within the NL East (the "Division-Exclusive License") and also explicitly limited Zelus's ability to license the Platform to no more than one club per MLB division, "thus limiting the total number of licensed MLB teams to six or fewer."

      4.      Upon information and belief, Teamworks acquired Zelus during the term of the Agreement, and as Zelus's successor in interest and/or parent company, Teamworks is bound by the terms of the Agreement and jointly responsible for ensuring compliance with its provisions.

      5.      The Platform provides proprietary baseball analytics models and metrics that inform critical baseball operations decisions, including player evaluation, prospect assessment, trade analysis, roster construction, asset valuation, and on-field strategy. These exclusive analytical tools give the team's front office a competitive advantage when determining player acquisition strategy, making personnel decisions, optimizing roster value, and maximizing on-field performance.

6.    Plaintiff The Phillies has invested substantial financial resources for the exclusive right to use these analytics within the NL East and with the express understanding that no more than six MLB teams in total would have access to the Platform or its components. This limitation ensures that The Phillies maintain a significant competitive advantage in talent evaluation, player development, and strategic decision-making within both their division and across MLB as a whole.

7.    On February 14, 2025, The Phillies properly exercised its contractual option to extend the Agreement under the same terms and conditions through the 2025 MLB season, including the Division-Exclusive License and the six-team total limitation (the "2025 Extension Option").

8.    After The Phillies exercised the 2025 Extension Option, Defendants attempted to alter the scope of the exclusivity provisions by proposing an amendment that would permit Defendants to sell individual components of the Platform to all other MLB teams beyond the six-team and one NL East-team limits—effectively undermining the fundamental purpose of the Agreement's exclusivity provisions for which The Phillies paid a substantial premium.

9.    Moreover, before The Phillies exercised the 2025 Extension Option, Defendant Zelus explicitly stated to The Phillies via email and in phone conversations that Zelus intends to sell individual components of the Platform to

3

other MLB teams beyond the six-team and one NL East-team limits.

10.    Without urgent intervention from this Court, Defendants will continue

their efforts to circumvent the Agreement's limitations by repackaging components

of the Platform for sale to all additional MLB teams beyond the six-team, one NL

East-team limit, which will cause irreparable harm to The Phillies' competitive

advantage in evaluating, drafting, trading, signing, and maximizing the on-field

performance of professional baseball players in violation of the Agreement.

## II.    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332

because the parties are citizens of different states and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

12.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because

a substantial part of the events giving rise to the claim occurred in this District, and

the contractual relationship was performed, at least in part, in Philadelphia,

Pennsylvania.

13.    The Agreement at issue contains a choice of law provision specifying

that Pennsylvania law governs the parties' relationship.

## III.    PARTIES

14.    Plaintiff The Phillies is a professional baseball organization based in

Philadelphia, Pennsylvania, with its principal place of business at Citizens Bank Park, One Citizens Bank Way, Philadelphia, PA 19148.

15.    Defendant, Zelus Analytics, Inc., is a Texas corporation, with its principal place of business at 21750 Hardy Oak Blvd Ste 104 #14181, San Antonio, TX 78258-4946.

16.    Defendant Teamworks Innovations, Inc., is a Delaware corporation, with its principal place of business at 122 E Parrish Street, Durham, NC 27701-3319.

17.    Upon information and belief, following Teamworks' acquisition of Zelus, Defendant Teamworks has actively participated in and/or directed Zelus's business operations, including the marketing and sale of the Titan Intelligence Platform and its components.

## IV.    FACTUAL ALLEGATIONS

### A. The Contractual Relationship Between The Phillies and Zelus

18.    On or about April 9, 2022, The Phillies and Zelus entered into a written agreement (referred to as "Order #1") granting The Phillies an exclusive license to use the Titan Intelligence Platform within the NL East for a term through April 1, 2023. Order #1 also prohibited Zelus from licensing the Titan Intelligence Platform to more than one team in each of MLB's six divisions.  A true and correct

copy of Order #1 is attached hereto as Exhibit "A".

19.    On or about February 17, 2023, the parties entered into a subsequent agreement (referred to as "Order #2") extending the term of the Division-Exclusive License through March 31, 2025, with The Phillies committing $1,275,000.00 for exclusive access to the Platform. A true and correct copy of Order #2 is attached hereto as Exhibit "B".

20.    Section 1 of Order #2 defines the "Platform" as "the Titan Intelligence Platform for MLB ('Platform' or 'Software'), a suite of proprietary baseball analytics models and metrics accessible to the Club through a dedicated, cloud-hosted data warehouse and a set of cloud-hosted web APIs."

21.    Section 5 of Order #2 explicitly grants The Phillies a "Division-Exclusive License," stating: "In consideration of the Total Cost, the Club will receive an exclusive license to use the Platform within MLB's National League East division ('Club's Division') throughout the Term (a 'Division-Exclusive License'), including any extension of the Term. Additionally, Zelus will license the Platform to no more than one club per MLB division, thus limiting the total number of licensed MLB teams (each a 'Licensee') to six or fewer, including Club." This language establishes two critical limitations: (1) a division-exclusive license for The Phillies; and (2) a cap of six total MLB teams that can access the

Platform. This express language not only guarantees The Phillies exclusivity within the NL East, but also caps the total number of MLB teams with concurrent access to the Platform at six teams at any given time.[1]

22.    Section 6 of Order #2 granted The Phillies a unilateral "option to extend the Term to cover the 2025 MLB Season, under the same terms and conditions in this Agreement, including Club's Division-Exclusive License to the Platform and Abbreviated-Season Discount."

23.    On February 14, 2025, in accordance with Section 6 of Order #2, The Phillies formally exercised its option to extend the Agreement via email from Anirudh "Ani" Kilambi (Assistant General Manager of The Phillies) to Kyle Charters and Doug Fearing of Zelus, stating: "I am writing to formally notify you that The Phillies are exercising our option to extend the Term of our Agreement (attached) to cover the 2025 MLB Season, under the same terms and conditions in this Agreement, including Club's Division-Exclusive License to the Platform and Abbreviated-Season Discount." A true and correct copy of this email is attached

---

1 The Phillies acknowledge that if one of the current six licensee teams terminates or elects not to renew its agreement with Defendants, Defendants may replace that team with another team from the same division, provided that (1) at no time do more than six MLB teams concurrently have access to the Platform or its components, and (2) no other NL East team is granted access to the Platform or its components.

hereto as Exhibit "C".[2]

24.     This one-year extension for the exclusive use of the Platform was effective immediately upon The Phillies' exercise of its option, creating a binding contractual obligation for both parties to continue under the same terms and conditions, including both the Division-Exclusive License and the six-team total limitation, through the 2025 MLB season.

25.     Upon information and belief, following Teamworks' acquisition of Zelus, Teamworks assumed or otherwise became bound by Zelus's contractual obligations to The Phillies, including all exclusivity provisions and limitations on distribution of the Platform.

### B. The Phillies' Substantial Investment in Exclusivity

26.     The Phillies has invested substantial financial resources to secure the promised exclusivity, paying over $1.75 million for access to the Platform and its analytics models since 2022, with an additional $725,000.00 (or $675,000.00 with prepayment) committed for the 2025 extension period.

27.     The Division-Exclusive License provision, and the six-team total

---

2 Although the Agreement references January 31, 2025 as the deadline for The Phillies to exercise its option to extend the Agreement, Zelus and The Phillies agreed to extend this deadline on two separate occasions. On January 31, 2025, the parties agreed to extend this deadline to February 7, 2025. On February 7, 2025, the parties agreed to again extend the deadline to February 14, 2025. True and correct copies of the emails memorializing these agreements to extend the deadline are attached hereto as Exhibit "D".

limitation are material terms of the Agreement, for which The Phillies have paid a significant premium as part of the Total Cost. The Phillies agreed to this substantial investment specifically to secure a competitive advantage through exclusive access within their division and with the limited distribution of the Platform across all MLB teams.

28.    The Phillies has also invested significant time and resources in integrating the Platform into its baseball operations, making strategic decisions based on the analytical capabilities provided by Zelus and the Platform, with the justified expectation that (1) none of its direct divisional competitors would have access to the same proprietary tools; and (2) no more than six MLB teams in total would have access to these tools, thereby allowing The Phillies to maintain a significant competitive advantage across the league.

### C. Zelus's Plan to Unbundle the Platform and Circumvent Exclusivity

29.    On November 21, 2024, Doug Fearing of Defendant Zelus sent Ani Kilambi of The Phillies an email outlining plans to unbundle the Platform into separate products (Data Engine, Roster Intelligence: Base, Roster Intelligence: Complete, and Game Intelligence), all of which are integrated components making up the Titan Intelligence Platform. A true and correct copy of this email is attached hereto as Exhibit "E".

30.     In this email, Mr. Fearing stated that Defendants were "planning to offer a few standalone products at Winter Meetings in December," noting that "Each of the Intelligence offerings would include the Data Engine capabilities." Mr. Fearing further explained that "for any new customers (and subject to any exclusivity restrictions), we plan to offer our Titan Intelligence platform non-exclusively at $465k/$495k/$525k for a three-year term. The platform would include the combined capabilities of all the products listed above as our most comprehensive baseball Intelligence offering available."

31.     This email demonstrated Defendants' intention to repackage and sell what were previously the integrated components of the Platform separately, making them available to additional MLB teams beyond the six-team and one NL East-team limits expressly established in Section 5 of Order #2, while acknowledging the existence of "exclusivity restrictions."

32.     In the same November 21, 2024 email, Defendants attempted to induce The Phillies to surrender their exclusivity rights, stating: "Our hope is that each of our current partners will transition to non-exclusive terms" by offering discounted pricing in exchange.

33.     The Phillies at all times rejected Defendants' demand that The Phillies agree to a non-exclusive license and repeatedly raised concerns to Defendants that

such requirements would violate The Phillies' bargained for exclusive rights to the Platform.

34.     When The Phillies exercised its option to extend the Agreement on February 14, 2025, it explicitly reserved "all rights available to us as we discuss a resolution to the disagreement about the Division-Exclusive License to the Platform."

35.     On February 20, 2025, in an email to William Robinson of Defendant Zelus, Frankie Garland, Deputy General Counsel of The Phillies, reinforced The Phillies' position, stating: "The Phillies feel strongly that the exclusivity guaranteed to us in Order #2 covers the entire 'suite of proprietary baseball analytics models and metrics' which comprise the Titan Intelligence Platform." A true and correct copy of this email is attached hereto as Exhibit "F".

36.     On February 24, 2025, after The Phillies had already exercised its option to extend under the existing terms, Defendants attempted to alter the scope of the exclusivity provision by proposing Amendment #1 to Order #2. A true and correct copy of this proposed amendment and the accompanying email is attached hereto as Exhibit "G".

37.     In the email accompanying the proposed amendment, William Robinson of Defendant Zelus explicitly acknowledged The Phillies' concern "that

11

Zelus should not be able to circumvent the Division Exclusivity in Section 5 of Order #2 by simply licensing another club all the separate components such that the club effectively obtains all the same functionality as it would by purchasing Titan."

38.    Despite acknowledging this legitimate concern, Defendants' proposed amendment attempted to add language to Section 5 of Order #2 stating: "Nothing in this Section 5 restricts Zelus from licensing individual features, capabilities, or components of the Platform, which Club acknowledges may be packaged and sold on an individual basis by Zelus."

39.    This proposed amendment constitutes an admission by Defendants that the current contract language prohibits Defendants from licensing individual components to MLB teams beyond the six-team and one NL East-team limits established in Section 5 of Order #2.

40.    Additionally, by proposing this amendment after The Phillies had already exercised its option to extend under the existing terms, Defendants attempted to improperly modify the Agreement without adequate consideration.

### D. Current Threat of Irreparable Harm to The Phillies

41.    Upon information and belief, Defendants have taken concrete steps toward selling, licensing, or distributing components of the Titan Intelligence

Platform to other MLB teams beyond the six-team and one NL East-team limits specifically established in Section 5 of Order #2, and in direct violation of the Agreement.

42.    The November 21, 2024 email confirms that Defendants intended to offer these unbundled products at the MLB Winter Meetings in December 2024 to an unlimited number of MLB teams, which would violate the express six-team and one NL East-team caps on access to the Platform established in the Agreement.

43.    The Phillies has demanded that Defendants provide immediate confirmation that (1) no part of the Titan Intelligence Platform, or its components, would be made available to any NL East team during the term of the Agreement, including the 2025 extension period; and (2) Defendants would not license the Platform or its components to more than the six MLB teams who signed up and paid for the Platform.

44.    Defendants have failed to provide such assurances, and instead, upon information and belief, have continued their efforts to repackage and market components of the Platform to additional MLB teams beyond the six-team and one NL East-team limits.

45.    Defendants' actions in attempting to sell components of the Platform beyond the six-team and one NL East-team limits would cause irreparable harm to

The Phillies by:

    a.  Eliminating the competitive advantage The Phillies secured through its substantial investment in the Division-Exclusive License and the six-team limitation;

    b.  Providing numerous additional teams with access to the same proprietary analytics capabilities The Phillies paid to limit to just the six teams total and only one NL East team;

    c.  Diluting the value of The Phillies' investment in the Platform;

    d.  Creating an unquantifiable competitive disadvantage in player evaluation, acquisition, and strategic decision-making across MLB; and

    e.  Undermining The Phillies' ability to make baseball operations decisions based on proprietary analytics that were intended to be available to a strictly limited number of teams.

46.    The harm suffered by The Phillies cannot be adequately remedied by monetary damages alone, as the competitive advantage secured through the division exclusivity agreement and six-team limitation is unique and cannot be precisely quantified.

## CLAIMS FOR RELIEF

## COUNT I – BREACH OF CONTRACT

47.    The Phillies incorporates all preceding paragraphs as if fully set forth herein.

48.    The Agreement, including Order #1, Order #2, and the extension exercised on February 14, 2025, constitutes a valid and enforceable contract between The Phillies and Defendant Zelus, which now binds Defendant Teamworks as Zelus's successor in interest and/or parent company.

49.    The Phillies has fully performed their obligations under the Agreement, including making all required payments for the Platform.

50.    The Agreement unambiguously grants The Phillies the exclusive rights to the Platform within the NL East and explicitly limits distribution of the Platform to a maximum of six MLB teams. These provisions necessarily include prohibitions on distributing the component parts that comprise the Platform.

51.    Defendants' actions in selling or attempting to sell components of the Platform to MLB teams beyond the six-team and one NL East-team limits established in Section 5 of Order #2, or planning to do so, constitutes a material breach of the Agreement.

52.    Under Pennsylvania law, the Agreement must be interpreted to

15

effectuate the parties' intent, and avoid rendering contractual provisions meaningless. The Division-Exclusive License and the six-team limitation provisions absolutely and unequivocally restrict distribution of the Platform, including its component parts.

53.    As a result of Defendants' breach, The Phillies has suffered and will continue to suffer irreparable harm, including loss of competitive advantage and damage to their purchased exclusive rights under the Agreement.

## COUNT II – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

54.    The Phillies incorporates all preceding paragraphs as if fully set forth herein.

55.    Under Pennsylvania law, every contract contains an implied covenant of good faith and fair dealing, requiring both parties to act in a manner that does not deprive the other of the benefits of the contract.

56.    The Agreement includes an implied covenant that Defendants would not take actions to undermine or circumvent The Phillies' exclusive rights to the Platform within the NL East, or the six-team limitation that restricts Platform access to no more than six MLB teams total.

57.    By attempting to sell or license components of the Platform to teams beyond the six-team and one NL East-team limits established in Section 5 of Order

16

#2, Defendants are acting in bad faith and undermining the fundamental purpose of the Agreement and the exclusivity terms for which The Phillies paid a premium.

58.    Defendants' attempt to repackage the Platform's components immediately after The Phillies exercised its extension option, with the Defendants' aim of selling these components beyond the six-team and one NL East-team limits, constitutes a breach of the implied covenant of good faith and fair dealing.

59.    Pennsylvania courts reject attempts to circumvent the essence of contractual agreements.

60.    The Phillies has suffered damages and will continue to suffer irreparable harm as a result of Defendants' bad faith conduct.

## COUNT III – PROMISSORY ESTOPPEL

61.    The Phillies incorporates all preceding paragraphs as if fully set forth herein.

62.    Defendants made clear promises to The Phillies that (1) The Phillies would hold the exclusive license to the Titan Intelligence Platform within the NL East, and (2) no more than six MLB teams total would have access to the Platform.

63.    Defendants knew or should have reasonably expected that these promises would induce The Phillies to pay a substantial premium for said exclusivity and limited distribution, and would rely on the Defendants' promises in

17

its strategic planning and operations.

64.    The Phillies reasonably relied on Defendants' promises regarding division exclusivity and the six-team limitation when entering into and extending the Agreement, and when making decisions regarding The Phillies' analytics strategy and player personnel decisions.

65.    Injustice can only be avoided by enforcing Defendants' promises to maintain The Phillies' exclusive rights to the Platform within the NL East and to limit access to the Platform, including its components, to no more than six MLB teams total.

## COUNT IV – DECLARATORY JUDGMENT

66.    The Phillies incorporates all preceding paragraphs as if fully set forth herein.

67.    An actual controversy exists between The Phillies and Defendants regarding (1) the scope of the Division-Exclusive License, and whether it prohibits Defendants from licensing components of the Platform to other competing NL East teams; and (2) whether the six-team limitation in Section 5 of Order #2 prohibits Defendants from licensing the Platform or its components to more than six MLB teams total.

68.    This controversy is ripe for judicial determination, as Defendants have

indicated their intent to license components of the Platform to teams beyond the six-team and one NL East-team limits, as evidenced by its November 21, 2024 email and proposed amendment.

69.     The Phillies seeks a declaration from this Court that (1) the Division-Exclusive License in the Agreement prohibits Defendants from licensing any component of the Titan Intelligence Platform to any other team in the NL East; and (2) Section 5 of Order #2 prohibits Defendants from licensing the Platform or any of its components to more than six MLB teams total during the term of the Agreement, including the 2025 extension period.

70.     A declaratory judgment is necessary and appropriate at this time to prevent further harm to The Phillies from Defendants' actions and notified violations of the Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff The Phillies respectfully requests that this Court:

A. Issue a Temporary Restraining Order preventing Defendants from licensing, selling, or distributing the Titan Intelligence Platform, or any of its components, (1) to any other MLB team in the NL East, and (2) to any MLB teams beyond the six-team limit established in Section 5 of Order #2, provided that at no time shall more than six MLB teams

concurrently have access to the Platform or its components, for the duration of the Agreement, including the extension through the 2025 MLB season;

B. Issue a Preliminary Injunction maintaining the status quo and preventing further harm to The Phillies' exclusive rights under the Division-Exclusive License, and maintaining the six-team limitation;

C. Enter a Declaratory Judgment that (1) the Division-Exclusive License in the Agreement prohibits Defendants from licensing any component of the Titan Intelligence Platform to any other MLB team in the NL East; and (2) Section 5 of Order #2 prohibits Defendants from licensing the Platform or any of its components to more than six MLB teams concurrently during the term of the Agreement, though Defendants may replace an existing licensee with another team in the same division should an existing licensee terminate or elect not to renew its agreement, so long as the total number of MLB teams with access never exceeds six;

D. Award compensatory damages in an amount to be determined at trial for Defendants' breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference;

E. Award specific performance requiring Defendants to honor the division

exclusivity provisions and six-team limitation in the Agreement;

F.  Award attorneys' fees, costs, and expenses incurred by The Phillies in

this action as permitted by law;

G.  Award pre-judgment and post-judgment interest to The Phillies as

provided by law; and

H.  Grant such further relief as the Court deems just and proper.

Respectfully submitted,
BERGER LAW GROUP, PC

Phillip D. Berger, Esquire (#58942)
919 Conestoga Road
Building 3, Suite 114
Bryn Mawr, PA 19010
610-668-0774
Berger@BergerLawPC.com

Dated: 3/14/25